UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02471-WYD

GLORIA J. GONZALES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

    Defendant.
_____

**ORDER**
_____

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income ["SSI"]. Plaintiff's application filed in October 2002 (transcript ["Tr."] 359-62), was denied initially. (*Id.* 348-352.)[2] After a hearing in September 2004 where Plaintiff was unrepresented by counsel, an Administrative Law Judge ["ALJ"] issued a decision on December 6, 2004, that Plaintiff was not disabled. (*Id.* at 23-33.) This is discussed in more detail below.

After considering additional medical records Plaintiff submitted, the Appeals Council denied Plaintiff's request for review in November 2005, stating that it found no

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

[2] Plaintiff first applied for SSI in 1997. Her claim was denied after a hearing (*id.* 263-73), and she did not appeal. Plaintiff's second claim filed in January 2000 was denied after she failed to appear at a hearing. (*Id.* 50-51.) This is Plaintiff's third attempt to obtain SSI.

reason to review the ALJ's decision. (Tr. 15-18.) This became the final administrative decision and the case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

II.     THE UNDERLYING DECISIONS

    A.     The ALJ's Decision

The ALJ noted that Plaintiff was 46 years old at the date of the decision, a "younger" individual, who alleged an inability to work due to a variety of medical complaints including diabetes with neuropathy, vision problems and leg pain, seizure, depression and asthma. (Tr. 26-27.) The ALJ found that while Plaintiff alleged disability beginning July 1997, she is not eligible for SSI benefits prior to September 23, 2002, the date she protectively filed her application. (*Id.* 27.)

Turning to the sequential evaluation, the ALJ found at step one that Plaintiff had a "poor work history". (*Id.*) He further found that the evidence "does not show that the claimant has ever worked at substantial gainful levels." (*Id.*)

At step two, the ALJ found that Plaintiff had severe impairments consisting of insulin-dependent diabetes mellitus, asthma and epilepsy. (*Id.*) The ALJ found that Plaintiff's complaints of vision deficits and depression "have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual functional capacity over time." (*Id.*) Accordingly, he found those impairments were not severe. (*Id.* 27-28.)

At step three, the ALJ found that Plaintiff's severe impairments "are not attended with the specific clinical signs and diagnostic findings required to meet or equal the

requirements set forth in the Listing of Impairments." (Tr. 27.) Specifically, the ALJ stated that he considered Sections 3.00 ff., 9.00 ff, and 11.00 ff. relating to respiratory, endocrine and neurological impairments and found that "the requisite criteria are not met under any of the appropriate listings." (*Id.*)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"] and credibility. (Tr. 28-31.) As to credibility, the ALJ found that "the claimant's allegation that her impairments produce symptoms and limitations of sufficient severity to prevent all work activity is inconsistent with the medical and other evidence and is not considered fully credible." (*Id.* at 29.) Plaintiff was found to have the RFC:

> . . . for lifting and carrying 20 pounds occasionally and 10 pounds frequently. She could sit without limitation and could stand and walk for 30 minutes at a time and up to 4 hours total during the workday. The claimant should avoid climbing, exposure to work hazards and pulmonary irritants. She could occasionally stoop and climb stairs. She could understand, remember and carry out detailed work instructions and can generally interact appropriately with co-workers, supervisors and the public. The claimant is without further restriction.

(*Id.* at 31.)

Proceeding to step four, the ALJ found that Plaintiff "has never worked at substantial gainful levels and accordingly has no past relevant work experience." (Tr. 31.) Thus, the burden shifted to the Commissioner at step five to demonstrate that there are other jobs existing in significant numbers that Plaintiff could perform.

At step five, the ALJ considered Plaintiff's age (46), education (Plaintiff testified she has only a 6th grade education and never completed her GED), past work experience as a cashier and motel maid although not at substantial gainful levels, and

-3-

RFC. (Tr. 31, 26-27.) The ALJ found that this medical-vocational profile most closely paralleled Rules 201.18 and 202.17 of the Medical-Vocational Guidelines, both of which direct a conclusion of "not disabled". (*Id.* 31.) However, due to limitations that may erode the job base Plaintiff is able to perform, the ALJ stated that he used the medical-vocational rules only "as a framework for making a decision." (*Id.*)

The ALJ then found that Plaintiff's capacity for a range of sedentary to light work had not been significantly compromised by her nonexertional limitations, including her slight deficits on social interactions. (Tr. 31-32.) He stated:

> Essentially, the medical evidence does not support any *g*reater functional deficits than set forth above and, given the claimant's lack of treatment compliance and inconsistent responses concerning the extent of her daily activities, her testimony and the statements made by her relatives are not considered persuasive in establishing a disabling level of impairment. The record also indicates that the claimant has essentially never worked at substantial gainful levels, diminishing the credibility of her allegations that she is now unable to work from a medical standpoint.

(*Id.* 32.)

Using "the framework" of Medical-Vocational Rules 201.18 and 202.17, the ALJ found that significant numbers of jobs exist in the national economy that Plaintiff is capable of performing, although he did not identify those jobs. (*Id.*) The ALJ thus found that Plaintiff was not disabled. (*Id.*)

B.   The Appeals Council's Decision

On review, Plaintiff tendered new information to be considered by the Appeals Council, which included records from Sunrise Community Health Center from January 2003 through July 2004. (Tr. 18, 584-602.) The Appeals Council found no reason to

review the ALJ's decision. (*Id.* 15-18.) It stated, without further explanation, that the contentions raised in Plaintiff's representative's letter and the additional evidence did not provide a basis for changing the ALJ's decision. (*Id.* 16.)

III.   ANALYSIS

    A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

    B.   Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals a number of errors that require the Commissioner's decision to be reversed and remanded for a rehearing.

### 1.  The ALJ Erred at Step Five

I first find that the ALJ erred at the fifth step of the sequential evaluation process. The ALJ found in the RFC that Plaintiff had certain exertional and/or non-exertional impairments. (Tr. at 31.) While he initially concluded that Plaintiff's "capacity for a range of sedentary to light work has not been significantly compromised by her nonexertional limitations," he later concluded that "the claimant's additional limitations do not allow her to perform the full range of sedentary or light work." (*Id.* 31, 32.) The latter finding appears to be consistent with the RFC that restricted Plaintiff from work hazards, pulmonary irritants and other exertional limitations such as climbing. (*Id.* 31.) The ALJ had also noted slight deficits in social interaction and adaptation. (*Id.*)

As to the Medical-Vocational Guidelines, the ALJ correctly found "[d]ue to the additional limitations that may erode the job base that the claimant is able to perform the medical-vocational rules cannot be used to direct a finding. However, they may be used a framework for making a decision." (Tr. 31.) He then concluded, however, without any testimony by a vocational expert, that "the claimant's capacity for a range of sedentary to light work has not been significantly compromised by her nonexertional limitations, including her slight deficits on social interaction" and that "significant numbers of jobs exist in the national economy that the claimant is capable of performing." (*Id.* 31-32.) The ALJ did not identify what particular jobs existed that Plaintiff could do. I find that the ALJ erred in connection with these findings.

The Tenth Circuit has explained that an ALJ may not rely on conclusively on the Medical-Vocational Guidelines (also referred to as "the grids") "unless he or she finds

(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson*, 987 F.2d at 1488. Each of these findings must be supported by substantial evidence. *Id.* Further, resort to the grids is particularly inappropriate when evaluating nonexertional impairments such as pain and mental impairments. *Id.* "In that case, '[t]he grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.'" *Id.* (quotation omitted).

When it is unclear to what extent the occupational base is eroded by the exertional and/or nonexertional limitations, the ALJ must consult a vocational resource. *See* Soc. Sec. Reg. 83-12; *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) (where an individual has impairments resulting in both strength limitations and nonexertional impairments, or where exertional limitations prevent the claimant from doing the full range of work specified in an assigned RFC, vocational expert testimony is required to determine "whether jobs exist for someone with the claimant's precise disabilities"). Further, a vocational expert ["VE"] is ordinarily required to determine "what limitation . . . pain might impose on [the claimant's] ability to do . . . work." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).

I find that the ALJ erred in relying on the grids in this case without obtaining the testimony of a VE. First, the ALJ specifically found that Plaintiff could not perform a full range of work in the RFC due to her exertional and nonexertional limitations. Accordingly, the ALJ erred in not obtaining a VE to testify regarding the extent to which

the occupational base was eroded.  The ALJ's finding on that issue is pure speculation, unsupported by any expert testimony.

Second, the ALJ's finding that Plaintiff could perform jobs which exist in significant numbers in the economy was not supported by any evidence, or any finding as to which jobs that Plaintiff could perform.  This also is error, and requires the testimony of a VE.

Finally, the record clearly supports a finding that Plaintiff suffered from neuropathy, *i.e.*, pain.  While the ALJ found that the pain was not disabling (a finding I believe is not supported by substantial evidence as discussed below), that was not the end of the inquiry.  The impact of Plaintiff's pain on her ability to work should have been addressed and a VE should have been retained on that issue.

Based on these errors, I find that the ALJ's step five analysis is not supported by substantial evidence.  This matter must be remanded for a proper step five analysis.

2. <u>The ALJ Also Erred in Failing to Obtain Additional Medical Records Prior to His Decision</u>

I find that the ALJ also failed to properly develop the record by obtaining medical records Plaintiff referred to in the hearing.  Specifically, Plaintiff presented the ALJ with a letter from Dr. Smith at the beginning of the hearing which documented Plaintiff's impairments and referred to her treatment at Sunrise Community Health Center since 2002.  (Tr. 569.)  In addition, Plaintiff testified that she was receiving current medical treatment for her neuropathy, diabetes, seizures and depression and that she had seen

"an eye doctor and a foot doctor specialist." (*Id.* 617.) Despite this notice, the ALJ did not seek to develop the record on these issues.

While the Commissioner argues that the record contained sufficient information from which the ALJ could reach a conclusion about the combined effects of Plaintiff's impairments and further development of the record was unnecessary, I disagree. The best evidence about Plaintiff's impairments obviously would come from records of her treating physicians during the relevant time period, including the treatment she received at Sunrise. The hospitalization records from North Colorado Medical Center which the Commissioner references reflect only isolated incidents where Plaintiff was hospitalized on an emergency basis, and are no substitute for the treating physicians' diagnoses and treatment notes.[3]

I agree with Plaintiff that the ALJ was left with minimal evidence of the medical treatment Plaintiff received since her onset date related to the physical impairments. This may have negatively impacted the RFC finding as well as the ALJ's findings from step two onward. As a result, I find that the matter must be remanded so that the record can be properly developed and considered. *See* 42 U.S.C. § 423(d)(5)(B); *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing"). Indeed, I note that the duty to develop the

---

[3] The Commissioner also references Plaintiff's testimony about her symptoms and treatment. Plaintiff's testimony about her impairments and treatment of same does not and cannot substitute for medical evidence.

record was heightened in this case as Plaintiff was unrepresented by counsel at the hearing. *Musgrave*, 966 F.2d at 1374.[4]

It is also argued by the Commissioner as a basis for affirming its decision that any error by the ALJ in not developing the record was reasonably ameliorated by the fact that the Appeals Council reviewed additional medical records that were submitted by Plaintiff on appeal. (*See* Tr. 584-602.) I disagree.

When new evidence is considered by the Appeals Council in connection with a claimant's request for administrative review, it becomes part of the overall record the Court assesses in evaluating the Commissioner's denial of benefits under the substantial-evidence standard. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Consideration of the new evidence does not require a change in the outcome where the ALJ's decision "remains supported by substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

Here, however, I find that the ALJ's decision was not supported by substantial evidence when the additional medical records are considered as part of the record. This evidence clearly supported the existence of Plaintiff's impairments as well as the fact that they were poorly controlled, even with medications that Plaintiff was taking. (Tr. 584-602.) This was not considered properly by the ALJ.

Further, the evidence shows that Plaintiff suffered from severe pain (neuropathy) associated with her diabetes. (*Id.*) These findings were supported by clinical notes

---

[4] While the ALJ did refer Plaintiff for a consultative examination about her depression, this did not satisfy the duty to develop the record on Plaintiff's medical issues, including obtaining medical records from her treating physicians.

based on treatment and observation by the treating physicians. The notes supported Plaintiff's complaints at the hearing, including her testimony that she had difficulty walking due to pain. (*Id.*)[5] The ALJ rejected Plaintiff's complaints of pain and difficulty walking, finding that they were not supported by medical evidence. If the medical evidence from Sunrise had been before the ALJ and had been properly considered, there may well have been a different outcome. Accordingly, I find that a remand is also proper on this issue.[6]

        3.    <u>The ALJ Also Erred In Determining Whether Plaintiff Was Disabled by Pain</u>

I also find error in the ALJ's assessment of Plaintiff's pain. In assessing complaints of pain, the ALJ must consider: (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)).

---

[5] Indeed, a physician filled out paperwork for handicapped parking for Plaintiff, clearly supporting Plaintiff's testimony in this regard. (*Id.* 586.)

[6] The Commissioner also argues that the evidence from Sunrise relevant to the period the ALJ was considering contained only diagnoses and no clinical findings. I disagree, finding clinical findings in the record. (Tr. 584-602.) Further, to the extent a treating physician's opinions or medical records are inadequate to determine whether a disability exists, the ALJ is required to contact the treating physician. See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

In the case at hand, there is objective medical evidence in the record of an impairment that caused pain; namely, diabetes mellitus which causes the end-organ damage known as peripheral neuropathy.  There is also a nexus between diabetes mellitus and her neuropathic foot pain.  The third part of the test required the ALJ to consider all of the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain."  *Id.*  The ALJ decided that Gonzales' subjective complaints of pain were not credible because she had a "very poor work history which suggests alternative reasons for her continuing unemployment;" she made "vague and evasive" statements to the examining psychologist when describing her daily activities; and she admitted at the hearing to occasionally watching her grandchildren. (Tr. 29.)

I find that these reasons do not provide substantial evidence to support the ALJ's decision to discount Plaintiff's pain complaints.  Specifically, I agree with Plaintiff that the fact she had a poor work history does not necessarily suggest that she had an incentive not to work without some evidence in the record showing that this was the case.  The ALJ offers no such evidence beyond his own speculation.  Further, a poor work history, even if there was evidence in the record of an incentive not to work, does not necessarily mean that Plaintiff's pain allegations are not credible.

The fact that the consultative psychologist believed Plaintiff to have been vague and evasive in some of her responses to questions does not necessarily indicate an intent to deceive without some evidence of this.  In fact, the record does not support that Plaintiff had any intent to deceive or be vague as to her pain allegations.

Dr. Valette wrote, "[s]he is much more specific on pain symptoms and her main thing that she focused on during this evaluation was the neuropathy and the pain in her legs and feet." (Tr. 579.)  If Dr. Valette had felt that she was trying to deceive him with her responses, he presumably would have stated that to have been her motivation. Further, when he asked Plaintiff about the main reason she was not working, she told him, "It's because of pain", which Dr. Valette did not question beyond stating his belief that "there is certainly a psychological component to her pain level." (*Id.*)

The third reason given by the ALJ as indicating evidence of non-severe pain was Plaintiff's admission "to occasionally watching her grandchildren, ages 2, 8, and 9." (Tr. 29.)  In fact, the transcript shows that both Plaintiff and her children testified that she had done very little of this, despite the ALJ's repetitive demands that she admit to more of that activity. (*Id.* 621-623, 627.)   Further, the fact that one occasionally watches children does not translate to a finding that one's complaints of pain are not credible, particularly when the medical evidence supports the pain allegations.  *See Thompson*, 987 F.2d 1490 ("the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain") (citing *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)).

I also agree with Plaintiff that the ALJ improperly gave no credence to her expressions of foot pain at her hearing (Tr.612, 615-618), the letters written by her daughters and sisters before the hearing (*id.* 408, 412, 416-417), and her daughters' testimony at the hearing (*id.* 626-631).  The ALJ's only comment was that "these observations were made by non-medical sources and are based only on the claimant's

-13-

subjective complaints." (*Id.* 29.)  But, in this case, the family members' comments were based on their own observations of their sister and mother over many years.  Further, it appears that these comments were supported by the medical evidence in the record, including Dr. Smith's letter.  (*Id.* 569.)  The ALJ's dismissal of their comments violated 20 C.F.R. § 404.1513(4)(d), which allows "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . . includ[ing] . . . (4) Other non-medical sources (for example, spouses, parents, and other caregivers, siblings, other relatives. . .)."  The ALJ's blanket rejection of this testimony requires a remand for more individualized consideration.

The failure to develop the record on the medical evidence also impacted the pain finding.  The ALJ was required to consider in assessing the credibility of Plaintiff's pain complaints the medical evidence and "any other objective indications of the degree of pain".  *Luna*, 834 F.2d at 163.  Dr. Smith noted in his letter that Plaintiff's diabetes was "very poorly controlled with neuropathy (severe pain)".  The failure to properly consider that or to obtain all the underlying medical records regarding this impairment and the pain associated with same was error, resulting in the fact that the ALJ could not properly consider whether the medical data supported Plaintiff's allegations of pain.

The ALJ also erred in not considering Plaintiff's levels of medication and their effectiveness, as well as the medications' effect on Plaintiff's ability to work.  *See Thompson*, 987 F.2d at 1489.  Indeed, the transcript revealed that one or more of her medications was changed to accommodate her multiple problems at thirteen of her

nineteen visits. (Tr. 584-99; 601-02.) Further, the ALJ improperly questioned Plaintiff's credibility on the basis that she was not compliant with her medications and treatment regimen (*id.* 30-31) without properly considering Plaintiff's financial ability to pay for same. (*id.* 569) ("[f]inancial constraints have made it difficult and sometimes impossible for [Gonzales] to obtain her medications and diabetes testing supplies on a regular basis  . . . . the prognosis is still guarded given the limited resources available to her.").[7] All of these errors require that the case be remanded for further factfinding.

Finally, even if Plaintiff's allegations of pain are not ultimately found to be disabling, this is not the end of the inquiry. *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91) (further quotations omitted). The ALJ also erred in not properly considering this issue.

### 4. On Remand, the ALJ Must Reassess His Findings At All Steps Beginning With Step Two Based on the New Medical Evidence

As discussed earlier, the ALJ failed to develop the record adequately in connection with the medical evidence and failed to consider records from Sunrise Medical Center. This medical evidence must be developed and considered on remand,

---

[7] The ALJ improperly found that Plaintiff's financial ability to pay for her eyeglasses or treatment was not an issue to be decided in his decision. (Tr. 31.) Further, to the extent he diminished Plaintiff's credibility by accepting a "source's" belief that Plaintiff spent her money on cigarettes in order to "plead poverty" for free medications, the ALJ made her finances an issue that he apparently resolved against her. (*Id.* 28, 30-31.) I find that this was error. It was the ALJ's duty to inquire, as part of development of the record, whether Plaintiff could in fact afford treatment and whether any alternative forms of payment were available to her. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *6 (10th Cir. 2004). Further, given the extensive number of medications that Plaintiff *was* taking (Tr. 410), the ALJ's remarks about her finances are not necessarily supported by substantial evidence.

which necessarily includes a reassessment of Plaintiff's impairments and their impact on Plaintiff's ability to work beginning at step two.

For example, at step two, the ALJ found that Plaintiff's depression and vision problems were not severe within the meaning of the Social Security Act, based partially on the fact that they were not sufficiently documented in the medical evidence. However, the records from the Sunrise Medical Center do document these impairments and must be considered in determining whether the impairments are severe.[8] In reassessing Plaintiff's impairments at step two, the ALJ should keep in mind that "[w]hile 'the mere presence of a condition or ailment' is not enough to get the claimant past step two' . . a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quotation omitted).

At step three, Plaintiff argues that the ALJ erred in his decision by failing to discuss the evidence and reasons why he found that Plaintiff's severe impairments of insulin-dependent diabetes mellitus, asthma and epilepsy did not meet the Listings. I first note that the issue of whether Plaintiff's impairments meet the Listings will need to be reassessed on remand given the fact that I find the ALJ erred in his duty to develop the record as to the medical evidence. On remand the ALJ must state what specific Listings were considered, discuss the evidence and provide specific reasons for finding

---

[8] The record documented vision problems, including blurred vision that impacted Plaintiff's ability to drive, and problems from depression. (Tr. 577, 578, 614, 617-19). The ALJ did not properly consider this evidence.

-16-

that Listings are or are not met.[9] A summary conclusion that Plaintiff does not meet the Listings is not sufficient. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996).

IV.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated August 29, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

[9] This includes consideration of the Listings relevant to Plaintiff's neuropathy, including any limitations related to walking. (*See, e.g.,* Tr. at 578, 584, 589-591, 616-617, 628.)